### Wytheville

## DIRECTOR GENERAL OF RAILROADS (ATLANTIC COAST LINE RAILROAD)· V. CARRIE L. LUCAS.

### June 16, 1921.

1. APPEAL AND ERROR—*New Trials—Conflict in Evidence.*—In an action for injuries sustained in an automobile accident at a railroad crossing, if the evidence relied upon by the plaintiff was true, the defendant was clearly responsible; if that relied upon by the defendant was true, then the gross negligence of the driver was the sole cause of the injury. Five of the occupants of the automobile fully sustained the plaintiff's view of the facts; two of the occupants of the automobile, the gateman and the trainmen, sustained the defendant's view.

   *Held:* That the trial court committed no reversible error in accepting the judgment of the jury as to the credibility of the witnesses and sustaining a verdict for plaintiff.

2. CONTRIBUTORY NEGLIGENCE—*Statement of Defense in Writing—Section 6092, Code of 1919.*—In the instant case the defendant failed to give any notice of intention to rely upon the contributory negligence of the plaintiff as a defense; no statement in writing giving the particulars thereof was filed, either before the trial began, or at any other time; and there was nothing in the plaintiff's testimony which disclosed any contributory negligence on her part.

   *Held:* That, under Code of 1919, section 6092, defendant could not rely upon the defense of contributory negligence.

3. AUTOMOBILES—*Contributory Negligence of Passenger.*—While it is true that plaintiff who was injured while a passenger in an automobile, having no control over the driver, cannot recover if his own contributory negligence was an efficient cause of the injury, yet the duty of such passenger to warn and guide the driver is a doubtful one.

4. INSTRUCTIONS—*Succinctness.*—The substitution by the lower court of four clear, succinct and sufficient instructions, in lieu of twenty requested, containing a mass of hypothetical, though correct, propositions of law which would not have aided the jury, approved.

5. APPEAL AND ERROR—*Error Favorable to Appellant.*—Error favorable to the appelant constitutes no ground of reversal.

6. CROSSINGS—*Automobiles—Accident at Crossing—Instructions.*— In an action arising out of an accident at a crossing, an instruction that if the jury believed that when the automobile in which plaintiff was a passenger approached a railroad crossing no gong or bell was ringing, the gates were open, and the driver and plaintiff looked and listened for a train, and saw none approaching, then the driver had the right to assume the crossing was clear and was justified in undertaking to cross, was held proper.

7. CROSSINGS — *Automobiles—Accident at Crossing—Instructions.*— In an action arising out of an accident at a crossing, an instruction that if, at the time the automobile was approaching the crossing the gates were down, or being lowered, and, notwithstanding this, the driver attempted to cross or was going so fast that he could not stop and the automobile was struck and plaintiff injured, the jury should find for the defendant, fairly presents defendant's defense that there was no primary negligence on its part, but that the sole proximate cause of plaintiff's injury was the gross negligence of the driver of the automobile.

8. CROSSINGS — *Automobiles — Accident at Crossing — Last Clear Chance—Instructions.*—In an action arising out of an accident at a crossing, evidence was introduced by the plaintiff to the effect that even after the gate on the east side of the crossing, which barred the progress of the automobile, descended, there was sufficient time for the watchman to have raised it so as to allow the automobile to proceed, and that he refused to do so.

  *Held:* That an instruction based on this evidence designed to present the last clear chance doctrine to the jury, the purpose and meaning of which was sufficiently clear although its language could have been easily improved and clarified, was not erroneous.

9. INSTRUCTIONS—*"Proximate Cause" and "Reasonable Care."*—In an action arising out of an accident at a crossing, the failure of the lower court to define "proximate cause" and "reasonable care" was not error, as the court did not use either of the expressions in any of the instructions actually given, so that to have undertaken their definition would not have aided the jury.

10. APPEAL AND ERROR—*New Trials—Excessive Damages.*—The Supreme Court of Appeals will not set aside the verdict of a jury upon the ground that the damages are excessive, unless it appears that the jury has been influenced by passion or prejudice, or has misconceived some legal doctrine.

Error to a judgment of the Hustings Court of the city of Petersburg, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

*Wm. B. McIlwaine* and *Mann & Townsend,* for the plaintiff in error.

*R. H. Mann* and *J. Toomer Garrow,* for the defendant in error.

The opinion states the case.

PRENTIS, J., delivered the opinion of the court.

This action arises out of injuries sustained by Carrie L. Lucas, a married woman, forty-two years of age, who was a passenger for hire in a seven-passenger automobile, driven by its owner, because of a collision with one of the engines of the railway company at what is known as the Lombard (or East Bank) street crossing, in Petersburg. There was a verdict and judgment for the plaintiff, which is here under review.

According to the testimony of the plaintiff and her witnesses, she had taken passage from Petersburg for Hopewell, and was in the rear seat. The driver and two men occupied the front seat, the center seats were occupied by two other men, and the rear seat by the plaintiff, her daughter and another man passenger. The automobile was carefully driven, and all the precautions which are customary were observed. Its speed was slackened to approximately

five miles an hour as they reached the crossing; the view was obscured by buildings located very near the railway track; the safety gates were up; neither the gong at the crossing nor the bell on the engine was ringing. While thus carefully proceeding eastwardly they found immediately after they passed the west gate and reached the track that the gateman was lowering the safety gates. The driver called to him to allow him to pass, but he continued to lower the gates, and the east gate was thus lowered after the machine had passed the west gate. Being thus caught between the two gates, and realizing then for the first time that the train was approaching, the driver put on his brakes, the surface of the street being wet and slippery from rain, the automobile skidded and stopped upon the track. All of the passengers then alighted safely except the plaintiff. She, while being assisted to alight, was dragged along, so bruised and injured as to have a miscarriage within a few days thereafter, has since suffered from extreme nervousness and what is diagnosed by the medical profession as traumatic neurasthenia, and has twice attempted to take her own life.

The evidence for the defendant on the contrary is: That the automobile was exceeding the speed limit prescribed by a city ordinance; that the gong was ringing; that the bell on the engine was also ringing; that the gates were actually being lowered when the automobile was more than 100 feet away from the track; that in his effort to avoid being struck by the western gate, the automobile driver turned his machine towards the curb and went either entirely around the gate or under it, as it was descending, and then suddenly stopped in front of the approaching train.

[1] So that upon the evidence there is no middle ground. If that relied upon by the plaintiff is true, the defendant is clearly responsible; if that relied upon by the defendant

is true, then the gross negligence of the driver is the sole cause of the injury, there was no primary negligence on the part of the defendant, and the plaintiff is not entitled to recover.

It is remarked in passing that the plaintiff and five of the occupants of the automobile fully, positively and circumstantially sustain her view of the facts, while two of these occupants, the gateman and the trainman, sustain the defendant's view. Under these circumstances, it is manifest that unless the record discloses some 'harmful error of law during the trial the verdict will not be disturbed here.

There are three assignments of error.

1. That the verdict is contrary to the evidence, or without evidence to support it, and that the court erred in refusing to set it aside and enter judgment in favor of the defendant.

It follows from what we have recited as to the conflicting evidence, that the trial court committed no reversible error in accepting the judgment of the jury as to the credibility of the witnesses.

2. It is urged that the court erred in refusing to give certain instructions prayed for by the defendant, in giving over the defendant's objection a certain instruction prayed for by the plaintiff, as well as in giving certain other instructions which were asked for by neither party.

[2]    Many cases are cited, announcing well established doctrines of law with reference to contributory negligence, but we cannot apply them to this case because of the statute, Code 1919, 6092, which reads thus: "If the defendant in any action of tort intends to rely upon the contributory negligence of the plaintiff as a defense to the action, he shall so state in writing before the trial begins, giving the particulars thereof as fully as the plaintiff is required to state the negligence of the defendant in his declaration or

bill of particulars; but the defendant shall not be precluded from relying upon the contributory negligence disclosed to the defendant by the plaintiff's testimony."

This section, in its present form, appears first in the new Code, and of course cases decided before its enactment are of little value in applying it. In this case the defendant failed to give any notice of intention to rely upon the contributory negligence of the plaintiff as a defense; no statement in writing giving the particulars thereof was filed, either before the trial began, or at any other time; and there is nothing in the plaintiff's testimony which discloses any contributory negligence on her part. Because of this, much of the argument presented by the briefs appears to us to be immaterial. The statute controls, and there is nothing in the plaintiff's testimony from which any contributory negligence on her part can be inferred. Indeed, it is clear therefrom (and the evidence introduced by the defendant cannot be considered in this connection), that there was no such negligence on her part.

[3] While true that a plaintiff who is injured while a passenger in an automobile, though having no control over the driver, if his own contributory negligence was an efficient cause of the injury, cannot recover, still in such cases we think that this wit and wisdom from Burke, J. in *Hedges* v. *Mitchell* (Colo.), 194 Pac. 620, should not be ignored: "It is contended that some duty devolved upon plaintiff (a passenger on the rear seat of defendant's automobile) to warn and guide defendant as to his route of travel, his speed, etc., and that neglect to discharge that duty constituted such contributory negligence as to defeat recovery. If such be the law, the instructions given were ample. But a duty to give such advice implies a duty to heed it, and the rear seat driver is responsible for enough accidents as the score stands without the aid of judicial precedent. The place for a passenger who knows better than the driver

of a car when, where, and how it should be operated is at the wheel."

[4] The plaintiff asked for five instructions of which the court gave only one. The defendant asked for nineteen instructions, of which the court granted three. In addition to these the court gave four in lieu of the twenty instructions which were refused. While some of those which were given should have been more clearly expressed, and are doubtless subject to some of the other criticisms thereof which are made by the defendant's attorneys, still we fully approve the evident purpose of the trial judge to aid the jury to a just conclusion by a few clear, succinct and sufficient instructions rather than to mystify and confuse them by a mass of hypothetical, though correct, propositions of law which would not have so aided them.

[5] Instruction 1 reads thus: "The burden of proving negligence is upon the plaintiff by a preponderance of the evidence. The burden of proving contributory negligence by a preponderance of evidence is upon the defendant." Of course there can be no question as to the correctness of the first clause of this instruction in this case. The second clause is erroneous as well as improper in this case because of the statute to which we have just referred; but this error was favorable to the defendant, and hence constitutes no ground of reversal here.

[6] The second instruction reads: "If the jury believe from the evidence that the automobile in which the plaintiff was a passenger approached the railroad crossing at which the accident occurred and that no gong or bell was ringing to warn of the approach of a train, and that the gates were up, and that the driver and plaintiff looked and listened for such train, and saw none approaching, then the driver had the right to assume the crossing was clear, and justified him in undertaking to cross; and, if in making the cross-

ing, his automobile was struck by a train and the plaintiff was injured, the jury should find for the plaintiff."

This, it will be seen, presents the view of the plaintiff, and we find nothing in it to indicate that the jury could have been misled thereby. If the evidence referred to in that instruction is true, then this plaintiff is entitled to recover.

[7] Instruction 3 reads thus: "If the jury believe from the evidence that, at the time the automobile was approaching the crossing, the gates were down, or being lowered, and, notwithstanding this, the driver attempted to cross or was going so fast that he could not stop, if such was the case, and in the act of so crossing his automobile was struck, and that the plaintiff was injured, the jury should find for the defendant."

This instruction fairly presents the chief contention of the defendant, and directs the jury's attention to the evidence which is relied upon to defeat the recovery. It expressly directs a verdict for the defendant if the jury shall believe that the evidence thus relied upon is true. It gives the defendant the full benefit of the only point upon which it can fairly rely under the testimony, that is that there was no primary negligence on its part, but that the sole proximate cause of the plaintiff's injury was the gross negligence of the driver of the automobile. Under the evidence and guided by this instruction, the jury, if they had credited the defendant's witnesses, would certainly have found for the defendant.

Instruction No. 4, reading thus: "If the jury believe from the evidence that the driver of the automobile in approaching the railroad crossing, saw the gates were down, or being lowered, and attempted to drive around the gates, and make the crossing, or skidded around the gates, and, in so doing, the automobile was struck, and the plaintiff injured, the jury should find for the defendant;" is also based upon the evidence relied upon by the defendant to show that it was

guilty of no primary negligence, and under these three instructions the merits of the case were fairly presented to the jury.

[8] Instruction No. 5 was offered by the plaintiff, and reads thus: "The court instructs the jury that, notwithstanding there may have been no negligence on the part of the defendant in the operation of his engines and cars, yet, if they believe that the plaintiff, from the evidence, was carried in the automobile upon the tracks of the defendant and that the gates were down in such position that the automobile was between the same and upon the tracks of the defendant, and that the plaintiff could have escaped injury had the defendant's watchman not lowered the gates in front of the automobile in which she was seated, or, if having lowered the same, he saw, or by the exercise of ordinary care could have seen the perilous position of the automobile and its occupants in time to have raised the gates so that the automobile could have been propelled out of danger, and failed to exercise ordinary care so to do, the defendant is guilty of negligence and the jury must find for the plaintiff."

It was thereby designed to present the doctrine of the last clear chance to the jury. It was based upon testimony introduced by the plaintiff, to the effect that even after the gate on the east side of the track, which barred the progress of the automobile, descended, there was then sufficient time for the watchman to have raised it so as to allow the automobile to proceed, and that he refused to do so. There is much in the testimony to justify this suggestion, because of certain physical facts which unquestionably appear. It is certain that the train was moving slowly, because it was stopped within a few feet, the tender still remaining upon the street crossing. It is equally true that the automobile was proceeding slowly, because it stopped suddenly on the track, and if it had been going rapidly just

before it thus stopped, it would probably have skidded very much farther than it did.   Then, seven people alighted safely from the automobile after it had stopped on the track and between the gates, and its occupants realized their peril. So that if the plaintiff is right about the facts, it may be fairly contended that there was ample time, if the eastern gate had been promptly raised, to have avoided the injury. We find no sufficient reason for holding this to be an erroneous instruction.   While its language could be easily improved and clarified, its purpose and meaning are sufficiently clear.

The other three instructions which the court gave were offered by the defendant, and of course its exception cannot relate to these.   Instruction 6 undertakes to relieve the watchman or gateman, Taylor, from responsibility for his failure to raise the gates upon the theory that he was suddenly required to act in an emergency caused by the negligent action of the driver of the automobile, and the jury were told that under these circumstances he was not required to exercise the presence of mind which is required of prudent men under ordinary circumstances.

Instruction 7 tells the jury that, if because of the wet and slippery condition of the roadway the automobile was liable to skid if the brakes were put on suddenly, then it was the duty of the driver of the automobile to be more careful as to the rate of speed at which he approached the crossing.

Then instruction 8 tells the jury that if the plaintiff's nervous condition may just as properly be attributed to some other cause as to the accident itself, then they cannot consider her present nervous condition in fixing the amount of her damages, in case they should determine under the evidence to find a verdict in her favor.

No new doctrines of law are involved, and our judgment is that these eight instructions fairly recognized the rights

of both the litigants, and that there is no reason to suppose that the jury misunderstood the issues to be determined. There was a verdict against the defendant because the jury believed that the preponderance of evidence sustained the plaintiff's contentions.

It is unnecessary for us to analyze or quote the sixteen instructions offered by the defendant which were refused. Several of them announce well established doctrines of the law, and in approved language, but those which are material here are sufficiently covered by the instructions which the court actually gave. For the reasons already given, those which referred to the contributory negligence of the plaintiff were properly refused.

[9] One complaint is that the court did not define for the jury the meaning of the expressions "proximate cause" and "reasonable care," which expressions appeared in some of these refused instructions; but there was no necessity for undertaking this difficult task in this case, because the court appears to have been very careful not to use either of these expressions in any of the eight instructions which were actually given, so that to have undertaken this task would not have aided the jury.

We hardly think it necessary to pursue this subject further, because, conceding many of the perfectly sound propositions which are urged for the defendant, the obvious conclusion is that the instructions which were actually given sufficiently safeguarded every right of the defendant, directed the jury's mind to the controlling issues involved in the case. The trial judge is to be commended for his effort to aid the jury by directing their attention to these crucial points, and in declining to confuse them by useless repetitions, or to mystify them with abstract doctrines of law which would not have aided them in determining the credibility of the witnesses in this case.

[10] 3. It is urged that the damages are excessive. As to this we can only repeat what has been so frequently said, that this court will not set aside the verdict of a jury, unless it appears that the jury has been influenced by passion or prejudice, or has misconceived some legal doctrine. While the verdict may be larger than is customary in this State for such injuries, we know of no precedent or reason which would justify us in setting it aside.

*Affirmed.*