**Robert E. PINCUS, Plaintiff,**

v.

**PABST BREWING COMPANY, a Delaware corporation, Defendant.**

**No. 87–C–0705.**

United States District Court, E.D. Wisconsin.

Dec. 12, 1990.

---

George P. Kersten, Kersten & McKinnon, Milwaukee, Wis., for plaintiff.

Kevin Brogan & William Bitting, Hill, Farrer & Burrill, Los Angeles, Cal., for defendant.

## DECISION AND ORDER

WARREN, Chief Judge.

On January 23, 1990, the United States Court of Appeals for the Seventh Circuit affirmed the judgment of this Court in the above-entitled action, 893 F.2d 1544, except as to damages, which the Seventh Circuit determined not to be rationally related to evidence of the plaintiff's expectation interest. *Id.* at 1554. The appellate court therefore remitted the damages amount to $525,000, but gave the plaintiff the option of a new trial limited to damages. *Id.* at 1556. This Court requested that the parties to this action submit letters or briefs regarding the logic and authorities of their positions on the scope of a retrial on damages considering the Seventh Circuit's opinion. Those submissions are before the Court.

## I. BACKGROUND

The Seventh Circuit set forth this action's factual and procedural background at 893 F.2d at 1545–1548.

## II. DISCUSSION

A. *Legal Framework*

The law of the case doctrine "is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter." *Barrett v. Baylor*, 457 F.2d 119, 123 (7th

Cir.1972) (citing *United States v. United States Smelting, Refining & Mining Co.,* 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950)). "The law of the case doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Redfield v. Continental Cas. Co.,* 818 F.2d 596, 605 (7th Cir.1987) (citing *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)); 1B Moore's Federal Practice ¶ 0.404[1], at 117–124. It is "a way to foreclose continued appeals for reconsideration of prior rulings of law." *Gertz v. Robert Welch, Inc.,* 680 F.2d 527, 532 (7th Cir.1982). The law of the case doctrine can be applied in two situations: (1) a court will not reconsider its own decision rendered at an earlier stage of the trial or on a prior appeal absent clear and convincing reasons to reexamine the prior ruling; and (2) an inferior court must apply the decision of a superior appellate tribunal on remand. *Id.* (citing decisions). This case presents the second situation, and implicates another procedural doctrine: the mandate rule. The mandate rule states that "a district court is not free to deviate from the appellate court's mandate." *Wheeler v. City of Pleasant Grove,* 746 F.2d 1437, 1440 n. 2 (11th Cir.1984); 5 Am.Jur.2d Appeal and Error § 991, p. 417 (1990); 6A Moore's Federal Practice ¶ 59.16, pp. 59–311–313. This action involves the juxtaposition of these two doctrines. In dispute is the scope of the Seventh Circuit's mandate; once that scope is determined, the finality of the appellate court's ruling under the law of the case doctrine as it relates to the plaintiff's evidence at a new damages trial can be judged.

Well-established principles exist regarding both doctrines. "[T]he law of the case doctrine is most commonly applied to govern the conduct of litigation on remand after an appeal,...." *Redfield,* 818 F.2d at 605. Although not an "immutable concept," *Walsh v. Mellas,* 837 F.2d 789, 796

(7th Cir.), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988), the law of the case doctrine "should be applied unless unusual circumstances or a compelling reason render it inapplicable." *Parts and Elec. Motors Inc. v. Sterling Elec.,* 866 F.2d 228, 231 (7th Cir.1988) (citing *Chicago & North Western Transportation Co. v. United States,* 574 F.2d 926, 930 (7th Cir.1978)); *Shakman v. Dunne,* 829 F.2d 1387, 1393 (7th Cir.1987) ("law of the case doctrine 'is not to be lightly disregarded' "), *cert. denied,* 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 991 (1988)). Recognized circumstances rendering the doctrine inapplicable include: "(1) substantial new evidence introduced after the first review, (2) a decision of the Supreme Court after the first review that is inconsistent with the decision on that review, and (3) a conviction on the part of the second reviewing court that the decision of the first was clearly erroneous." *Chicago & North Western,* 574 F.2d at 930.

"While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Sprague v. Ticonic National Bank,* 307 U.S. 161, 168, 59 S.Ct. 777, 781, 83 L.Ed. 1184 (1939). "Thus, it is critical to determine what issues were actually decided in order to define what is the 'law' of the case. This requires a careful reading of the Court's opinion: observations, commentary, or mere dicta touching upon issues not formally before the Court do not constitute binding determinations." *Gertz,* 680 F.2d at 533 (citing *Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979)). " '[I]f the issues were decided either expressly or by necessary implication, those determinations of law will be binding on remand and on a subsequent appeal.' " *Conway v. Chemical Leaman Tank Lines,* 644 F.2d 1059, 1062 (5th Cir.1981) (quoting *Lehrman v. Gulf Oil Corp.,* 500 F.2d 659, 663 (5th Cir.1974)).[1]

---

**1.** For a general discussion of the relationship between the appellate and district courts in the context of the mandate and law of the case

doctrines, see *Litman v. Mass. Mut. Life Ins. Co.,* 825 F.2d 1506, 1508–12 (11th Cir.1987).

## B. *Seventh Circuit's Ruling*

The Seventh Circuit's ruling in this action on the issue of damages consists of the following.[2]

The Seventh Circuit concluded that the "jury left Pincus in a dramatically better position than his rational expectation could have justified." 893 F.2d at 1554–55. The appellate court examined the evidence before the jury, as well as the second Benckiser–Pincus agreement of August 25, 1983, and determined "that the jury perceived barriers to effectuation of the Benckiser–Pincus agreement that simply did not exist." *Id.* at 1555. The court related:

> [I]t is significant that this second Benckiser–Pincus contract provided absolutely no compensation for Pincus unless PMP was transferred to Benckiser under either the "put" or "call" options of the contract. This is yet more evidence that Pincus' contract with Benckiser was not contingent or inchoate—Pincus was clearly and effectively committed to following its terms if he were to exercise his right of first refusal to purchase PMP. Pincus was not obligated to finance his purchase through such an instrument, of course, but once he chose to do so he staked out the limits of the amount he could expect to earn if the deal were consummated.

*Id.* at 1555. The appellate court characterized Pincus as exchanging flexibility for certainty of payment by negotiating the August 25, 1983 (second) Benckiser–Pincus contract, an agreement responding to the changing circumstances of "a competitive bid that Pincus could not match on his own." *Id.* at 1556. The Seventh Circuit then stated: "In this suit, however, Pincus may not rely upon hypotheticals that disregard the existence of that bargain." *Id.*

The appellate court determined that the bargain was worth $525,000 to Pincus "by the time it was breached." *Id.* As confirmation of this worth, the court looked to an October 26, 1983 (third) Benckiser–Pincus agreement in which Benckiser would buy

Pincus' permission to waive his right of first refusal. Although that contract was never enforced due to Pabst's refusal to negotiate with Benckiser, the Seventh Circuit gleaned from its $525,000 worth to Pincus "the extent to which Pincus was willing to trade his right to buy for a more certain right to payment." *Id.* The Seventh Circuit concluded that:

> To ignore the import of the second Benckiser agreement is to ignore the core fact of the damages issue. This Court's decision is not a matter of differing with possible inferences made by the jury, or of rejecting creative but plausible theories of counsel. It is a matter of requiring that the award bear some connection with the crucial facts not in dispute.

*Id.*

## C. *Analysis*

The issue before the Court, narrowly defined, is whether when an appellate court renders a decision after a jury trial, affirming on liability but giving the plaintiff the choice of accepting a remittitur of the damages award or undergoing a new trial on damages, if the plaintiff chooses a new trial on damages, do the appellate court's statements on the damages issue regarding the first trial circumscribe the admissible evidence at the new trial on damages?

This Court has gleaned no precedent on point from its research. Three premises provide the analytical framework for the Court's resolution of this issue.

■ The first proposition is that although an appellate court has the power to order a remittitur or a new trial, that appellate court does not have the power, due to the unliquidated nature of the damages in this action, to modify and affirm in a manner that usurps the power of the jury. "[T]he Seventh Amendment reserves the determination of damages, in jury trials within its scope, to the jury. A federal judge can set aside a jury verdict as excessive, but he can fix the proper level of

---

**2.** This Court's discussion here presupposes familiarity with Judge Cummings' opinion as well as the case's underlying facts.

damages only if the plaintiff is entitled to a particular amount of damages as a matter of law (for example where a statute specifies a fixed sum as liquidated damages for a violation)...." *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1392 (7th Cir.1984). Judge Posner went on in *McKinnon:* "The proper corrective is to give McKinnon the choice he was improperly denied, between accepting the remittitur and having a new trial on damages." *Id.* (citation omitted). *See also Haluschak v. Dodge City of Wauwatosa, Inc.,* 909 F.2d 254, 256 (7th Cir. 1990); 11 Wright & Miller, Federal Practice and Procedure, § 2815, p. 99 (1990).

■ The second proposition guiding the Court's decision is that an appellate court's role in considering the jury's damages award is to examine the evidence in the record, and alter that award if a rational connection does not exist between the evidence and the award, considering controlling legal principles. 893 F.2d at 1554. Thus, when the Seventh Circuit evaluated whether the jury verdict in this action of $3,885,595.30 was excessive, it did so by examining the evidence in the record under the contract law concept of expectation interest. 893 F.2d at 1554 (citing *Dehnart v. Waukesha,* 21 Wis.2d 583, 124 N.W.2d 664, 670 (1963)). The appellate court found that the evidence in the record regarding the August 25, 1983 (second) Benckiser–Pincus agreement could support only one determination: that a sale of Pincus, Inc. to Benckiser was an absolute certainty. 893 F.2d at 1555–56. The Seventh Circuit's role in making this determination was to render a sufficiency of the evidence determination "where essential facts are not in conflict," considering the controlling law.

■ The third proposition to consider is that "fixing a damage award is an exercise in fact-finding." 893 F.2d at 1554; *Whitley v. Seibel,* 676 F.2d 245, 252 (7th Cir.), *cert. denied,* 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982).

■ These propositions when examined together produce a construct of the appellate court's role. The Seventh Circuit in its damages ruling at 893 F.2d 1554–56 determined that the evidence in the record provided insufficient support for the jury's award under the legal principle of expectation interest. The appellate court ruled that the facts as found allowed for only a $525,000 recovery by the plaintiff because of the lack of evidence of barriers to effectuation of the second Benckiser–Pincus agreement. In so concluding, the Seventh Circuit altered the damage award because a rational connection did not exist between the evidence and the award, considering the controlling legal principle (second proposition). The Seventh Circuit did not fix the damage award when it deemed it incorrect, because such a role is for the jury as fact-finder, not the appellate court (third proposition). The appellate court had to reserve the determination of damages to the jury. Thus, the court mandated a remittitur to that amount which it determined the evidence in the record supported, or a new trial limited to damages (first proposition). *See e.g.,* 5 Am.Jur.2d Appeal and Error § 939, pp. 366–67.

Evaluating this characterization of the appellate court's role under the "law of the case" and "mandate" doctrines yields the answer to the central query. The amount of damages in an action is not a legal conclusion, but a finding of fact guided by a legal concept. Thus, when the Seventh Circuit ruled on the damages issue, it did so as a determination on the sufficiency of the factual predicate for the jury's damages award. But the "law of the case" doctrine only applies to determinations of questions of law, not questions of fact. *See* 5 Am.Jur.2d Appeal and Error § 755, p. 198. Therefore, the doctrine cannot constitute an evidentiary constraint during a new trial on damages, which is by its nature an exercise in fact-finding. Any new trial on damages is reserved for the jury, as once a new trial on damages is granted as an option, and that option is chosen, the seventh amendment preserves the jury's role as fact-finder inviolate. *Id.* at ¶¶ 963–65, pp. 390–92.

That an appellate court's rulings on the sufficiency of the evidence to support a damages award do not constrict the admission of evidence at a new trial on damages

is supported by a number of arguments: (1) a scenario in which the contrary is true would involve an appellate court in fact-finding, which is not its role in general, much less in the arena of awarding damages, which the seventh amendment reserves to the jury; this is the case because the appellate court would be "drawing the boundaries" before the beginning of the new damages trial by rendering controlling decisions on the strength and probativeness of evidence, rather than acting in its proper and limited role of analyzing the evidence in the record and deciding whether it had a rational connection with the damages award pursuant to the legal principle (second proposition above); (2) a scenario in which the contrary is true would be illogical, in that it would make the Seventh Circuit's provision for a new trial as a choice for the plaintiff effectively moot; there would be little sense in deeming the plaintiff's suit worth $525,000, but then providing for a new trial and through the law of the case doctrine limit the evidence to that in the first trial, thereby mandating an award of $525,000 or less; this Court finds it unlikely that the Seventh Circuit would remand this action for such "hoop-jumping"; (3) the defendant has not cited, nor is this Court aware of, a reported decision in which an appellate court determined the factual predicate for damages insufficient for the jury's áward, and provided for a remittitur or a new trial on damages, but then limited that new trial based on the appellate court's sufficiency of the evidence determination; and (4) the first exception to the law of the case doctrine states that it does not control when evidence in a subsequent trial produces substantially different evidence; *see e.g. Barber v. Int'l Brotherhood of Boilermakers,* 841 F.2d 1067, 1072 n. 5 (11th Cir.1988); the existence of this exception dictates that at a new trial, new evidence can be received.

It does not follow from this analysis that the Seventh Circuit's pronouncements on damages do not control after the new trial on damages. They certainly do. *See e.g.* 5 Am.Jur.2d Appeal and Error § 759, pp. 200–01, ¶¶ 746–50, pp. 189–95; *Gertz,* 680 F.2d at 534 n. 7. Thus, the defendant can bring motions for judgment notwithstanding the verdict or for remittitur after the new trial on damages should the evidence adduced not satisfy the Seventh Circuit's dictates to "suggest serious sticking points," 893 F.2d at 1555, to produce "barriers to effectuation of the Benckiser–Pincus agreement," *id.,* or to not "rely upon hypotheticals that disregard the existence of [the August 25, 1983] bargain." *Id.* at 1556. The burden is on the plaintiff at the new trial on damages. Further, the Seventh Circuit's rulings on the damages issue will be applied to the action should the evidentiary record of the two trials be sufficiently similar. 5 Am.Jur.2d Appeal and Error § 748, pp. 192–93. Moreover, the Seventh Circuit's decision on damages informs the understanding of the litigants and the Court as to the requisite quantum of proof in the damages trial.

It does not follow from the defendant's best counterargument to this analysis— that flexibility exists on a mandate with directions for a new trial, and thus that alternative resolutions on remand, including preclusion of evidence as settled by the law of the case, can exist[3]—that the appellate court's statements on damages therefore circumscribe the evidence able to be offered at the new trial on damages. Discovery may still occur, motions may be filed, and if genuine issues of material fact exist, a trial will be held. The defendant's argument on this count would emasculate the essence of a mandate that included the option for a new trial. The plaintiff must at least have the opportunity to muster substantially different evidence to satisfy his burden under the Seventh Circuit's decision.

■ The law of the case, as related above, controls this Court's determination of the sufficiency of the evidence and whether a rational connection exists be-

---

**3.** *See Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557, 559 (7th Cir. 1985).

tween that evidence and the damages award under the concept of expectation interest. Further, exceptions do exist to the application of the law of the case doctrine. Yet "[t]he law of the case exceptions apply only when substantially different evidence comes out in the course of a subsequent trial *authorized by the mandate.*" *Barber v. Int'l Brotherhood of Boilermakers*, 841 F.2d 1067, 1072 n. 5 (11th Cir.1988) (emphasis in original). This distinction is crucial. The mandate in this action authorized a new trial limited to damages should the plaintiff choose not to accept a remittitur to $525,000. The plaintiff chose a new trial on damages, and thus he retains the opportunity to present "substantially different evidence"; after such a new trial, the Court will determine whether that evidence falls within this exception to the law of the case doctrine. Should the plaintiff's case not fall within this exclusion, the law of the case and the mandate doctrines will limit his recovery to $525,000, *see supra* II.A., or he could be awarded nothing.

## IV. PREJUDGMENT INTEREST

In its March 5, 1990 denial of the plaintiff's petition for rehearing and suggestion for rehearing *en banc*, the Seventh Circuit stated that "[o]n remand, the district court shall consider the question of prejudgment interest, which was raised principally in the petition for rehearing." March 5, 1990 *Order*. The parties should address this issue in one brief each, not to exceed fifteen pages, which should be filed ten days before the date of the new trial on damages, should the matter go to trial, or within thirty days of the filing of any dispositive motions. The Court will render its determination on the issue at the conclusion of the new trial or in the *Decision and Order* rendered on any dispositive motions.

## V. SUMMARY

Under the foregoing reasoning, the Court determines that the Seventh Circuit's opinion in this action does not preclude the plaintiff from presenting its complete damages case at the new trial on damages,

subject to all standard procedural and evidentiary limitations. Accordingly, the defendant's oral motion to preclude testimony is DENIED. A conference call to enter a scheduling order for the new trial on damages pursuant to Fed.R.Civ.P. 16 will take place at *1:15 p.m. on Friday, December 21, 1990.* The plaintiff should initiate the call. At this conference call, the parties should be prepared to discuss discovery and dispositive motion deadlines, as well as final pretrial conference and trial dates.

SO ORDERED.