In re HIGHLAND FINANCIAL
CORPORATION and Highland
Cotton Corporation, Debtors.

Bankruptcy Nos. 95 B 45968,
95 B 45969(SMB).

United States Bankruptcy Court,
S.D. New York.

Dec. 15, 1997.

Kent, Beatty & Gordon, L.L.P. (Jack A. Gordon, of counsel), New York City, for Thompson and Wallace of Memphis, Inc., Carl Nichols, III, Dawkins Trading Co., Inc., Jim Dawkins.

Cadwalader, Wickersham & Taft (H. Peter Haveles, Jr., of counsel), Law Offices of Alan J. Shmaruk, New York City, for Debtors.

## MEMORANDUM DECISION DENYING MOTION *IN LIMINE*

STUART M. BERNSTEIN, Bankruptcy Judge.

The matter before me concerns the effect of the mandate issued by the Fifth Circuit Court of Appeals in a prior litigation between the same parties that involved the same issues. The creditors in this dispute, Thompson & Wallace of Memphis, Inc. and Carl G. Nichols, III (collectively "T & W") and Dawkins Trading, Inc. and Jim Dawkins (collectively "Dawkins Trading") (T & W and Dawkins Trading are sometimes referred to collectively as the "Claimants"), have moved *in limine* to limit the proof of damages at the trial of the debtors' objections to their claims. The Claimants contend that the Fifth Circuit Court of Appeals affirmed the jury's award of damages in the Claimants' favor, and under its mandate, I cannot revisit the issue. The debtors oppose the motion. For the reasons that follow, I conclude that I may hear evidence on damages, and accordingly, deny the motion.

## BACKGROUND

The debtors, Highland Financial Corporation ("Financial") and Highland Cotton Corporation ("Cotton") were formerly engaged in certain aspects of the cotton lending business, operating respectively under the names Falconwood Financial Corporation and Falconwood Cotton Corporation.[1] Financial made secured loans to cotton merchants for 80% to 90% of the value of the underlying collateral. *Thompson and Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 431 (5th Cir.1996) (*"Falconwood"*). Cotton advanced funds to customers by depositing money with Financial to adequately margin a merchant's loan. *Id.* The Claimants were cotton merchants who did business with the debtors from June 1990 to sometime in 1993.

### A. The Parties' Prior Litigation

#### 1. The District Court

In 1993, the Claimants filed an action in Texas state court which the debtors removed to the United States District Court for the Northern District of Texas.[2] The complaint charged the debtors, *inter alia*, with (1) violations of the Texas Deceptive Trade Practices Act (the "Texas Act"), (2) negligence and (3) breach of fiduciary duty relating to the parties' joint venture. The debtors counterclaimed for unpaid loans, and asserted various affirmative defenses including contributory negligence and waiver.

In June 1995, the Texas federal district court conducted a ten day jury trial. At the conclusion of the trial, the district court instructed the jury to treat the two debtors as a single entity and determined, as a matter of law, that joint ventures existed between the debtors and each defendant. *See Falconwood*, 100 F.3d at 434. It also refused to charge the jury on the affirmative defenses of contributory negligence and waiver, in effect, granting directed verdicts against the debtors on these issues. *Id.* Finally, it does not appear that the district court instructed the jury regarding the claims asserted individually by Carl Nichols, III or Jim Dawkins.

The district court submitted special questions to the jury to facilitate its deliberations and verdict. In response to these questions, the jury determined that the debtors had violated the Texas Act (Question No. 1), and were also negligent (Question No. 2) The district court did not include separate questions relating to damages for violation of the Texas act and negligence, and instead, submitted a single question. It stated that if the jury found the debtors liable under either theory, it should determine the Claimants' damages "proximately caused by Falconwood's negligence." (Question No. 3) The jury returned a verdict in favor of T & W in the aggregate sum of $1.1 million ($600,-000.00 in lost profits and $500,000.00 in damage to business reputation and good will) and $800,000.00 in favor of Dawkins ($300,000.00 in lost profits and $500,000.00 in damage to reputation or good will). The jury also awarded substantial exemplary damages on account of violations of the Texas Act, (see Question No. 5), but the parties agree that this award fell by virtue of the Fifth Circuit's disposition discussed below.

Having been instructed that a joint venture existed, the jury also found the debtors liable for breach of fiduciary duty. (Question No. 6) The jury awarded damages in the sum of $1,362,282.00 to T & W and $875,188.00 to Dawkins Trading. Thus, excluding the award for exemplary damages, the jury awarded a total of $2,462,282.00 to T & W (but not Nichols) and $1,675,188.00 to Dawkins Trading (but not Jim Dawkins).

Finally, the jury determined that the debtors were not entitled to recover on their counterclaims. Financial's approximate $1.4 million counterclaim against T & W involved an allegation that a T & W employee had submitted bogus proof of collateral thereby increasing T & W's borrowing base. Financial allegedly loaned $1,250,000.00 based upon the non-existent collateral, and T & W defended by arguing that the transaction fell outside the scope of its employee's authority.

1. The debtors changed their names from Falconwood to Highland immediately before they commenced these chapter 11 cases.

2. Other plaintiffs joined in the action, but the debtors settled with these parties prior to bankruptcy.

Hence, this aspect of the counterclaim depended upon the employee's authority, but the district court gave only a cursory charge on the law of agency. In addition, both debtors asserted that the Claimants owed substantial amounts on account of unpaid promissory notes.

### 2. The Court of Appeals

Following the verdict and judgment, in December 1995, the debtors filed their chapter 11 petitions. It is undisputed that one of the purposes was to avoid the posting of a supersedeas bond to restrain collection of the judgment. I granted relief from the automatic stay, and the debtors prosecuted their appeal in the Fifth Circuit Court of Appeals. On December 4, 1996, the Court of Appeals affirmed the judgment dismissing the debtors' counterclaim against Dawkins Trading, but reversed and remanded the judgment in all other respects. The Court held that Texas law was inapplicable, and that there was no basis to impose liability under the Texas Act. *Falconwood*, 100 F.3d at 433. The Court of Appeals also agreed that the district court should have submitted the issues regarding the existence of the joint venture, contributory negligence and waiver to the jury. *Id.* at 433–34. In addition, the Court concluded that the jury charge pertaining to agency was inadequate. *Id.* at 434.

The most significant aspect of the Circuit Court's decision to the present dispute concerns the Claimants' damages. The debtors had argued that the district court should have dismissed the complaint as a matter of law because the Claimants' had failed to prove that they were damaged, or at a minimum, granted a new trial. The debtors characterized the Claimants' evidence as "unsubstantiated, and … based on speculation and conjecture." *Brief of Defendants–Appellants* at 23.

The Fifth Circuit undertook to "review 'whether a reasonable person could find [the profits] were not speculative, but were proved with reasonable certainty.' " *Falconwood*, 100 F.3d at 435 (quoting *Hiller v. Manufacturers Prod. Research Group of N. Am., Inc.*, 59 F.3d 1514, 1522 (5th Cir.1995)). The Court concluded that the Claimants had met their burden of proof. *Falconwood*, 100 F.3d at 435. The Claimants proffered evidence of cancellation penalties, profit margins, lost customers and historical sales information. While most of the evidence came in through the testimony of the Claimants' own corporate officers, the jury was entitled to believe them. *Id.*

The opinion concluded:

> [W]e affirm the judgment on the verdict on the counterclaim against Dawkins. We reverse the judgment on the verdict as to the [Texas Act] claim and direct a dismissal. We reverse the judgment on the verdict on the negligence claim, breach of fiduciary duty claim, and counterclaim against T & W. We instruct the district court to give contributory negligence and waiver instructions, to have the jury determine whether a joint venture exists, and to give a more detailed agency instruction.

*Id.* at 436.

### B. The Bankruptcy Litigation

Each of the four Claimants filed a proof of claim in the sum of $10,000,000.00. The claims rely on a variety of theories including some never raised in the district court. The debtors filed objections to all four claims on the merits, reiterated their affirmative defenses and also requested equitable subordination. In addition, the debtors asserted counterclaims against T & W and Mr. Nichols. Financial seeks $1,131,300.00 and Cotton seeks $1,690,388.00 in liquidated damages, in addition to interest, costs, attorneys fees, punitive damages, an accounting and equitable subordination.

The Claimants maintain, through this motion, that I should not retry the issue of damages. They contend that the mandate of the Fifth Circuit established the Claimants' damages, and I cannot revisit the matter. Thus, I should try the liability issues regarding negligence and breach of fiduciary duty, and if I determine liability, allow the claims in the amounts fixed by the Texas jury. Further, the Claimants acknowledge that I must try the issues of contributory negligence and waiver, but maintain that they are independent of the liability and other issues. Finally, while I must also try the issues

surrounding the counterclaims against T & W, these, too, are admittedly independent of the amount of damages suffered by the Claimants.

The debtors disagree, and insist that they are entitled to offer evidence of damages. In the main, they argue that the damages issue is inextricably linked with the questions of contributory negligence and waiver which are concededly before me. They also contend that the failure to question the jury separately on damages under the Texas Act and negligence, coupled with the dismissal of the Texas Act claims, precludes the use of that award for any purposes. Next, they contend that the district court improperly charged the jury to treat the two debtors as a single entity, and hence, the damage awards do not reflect their individual liabilities. Finally, they argue that I must separately determine the debtors' liability and the Claimants' damages for each transaction, and cannot follow the district court's "all or nothing" approach.

## DISCUSSION

The dispute on this motion is bottomed on an admittedly ambiguous mandate which neither party has sought to clarify. The Court of Appeals seemed to "affirm" the damage award yet, aside from the dismissal of the counterclaim against Dawkins Trading, also seemed to reverse and remand for a full new trial rather than a partial new trial. In this regard, when the Fifth Circuit remands for a partial new trial, it usually expresses this intention clearly. *See, e.g., In re Sioux, Ltd., Secs. Litig. v. Coopers & Lybrand,* 914 F.2d 61, 66 (5th Cir.1990); *Pressey v. Patterson,* 898 F.2d 1018, 1024 (5th Cir.1990); *Costilla v. Aluminum Co. of Am.,* 835 F.2d 578, 580 (5th Cir.1988); *Brooks v. Great Lakes Dredge–Dock Co.,* 754 F.2d 539, 541 (5th Cir.1985); *Maxey v. Freightliner Corp.,* 727 F.2d 350, 352–53 (5th Cir.1984); *Higginbotham v. Ford Motor Co.,* 540 F.2d 762, 773 (5th Cir.1976).

This apparent conflict can nonetheless be reconciled. While the Fifth Circuit's mandate allows me to consider all of the issues,

my consideration may be proscribed by the doctrine of law of the case, discussed below. For present purposes, however, the Claimants' motion must be denied because there is no basis to limit the evidence at this point even if law of the case does apply.

## A. The Law of the Case Doctrine

Under the law of the case doctrine, a court may not address issues that have been litigated and decided in earlier proceedings in the same case. The doctrine is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. United States Smelting, Refining & Mining Co.,* 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950). Law of the case applies in two situations. First, a court will not ordinarily reconsider its own prior decisions, although it retains the discretion to do so. 18 Charles Alan Wright, *et al., Federal Practice & Procedure* § 4478, at 789–92 (2d ed. 1981) ("*Wright & Miller* "); *see Sagendorf–Teal v. County of Rensselaer,* 100 F.3d 270, 277 (2d Cir.1996). Second, a lower court must apply the decision of a superior court on remand. *Gertz v. Robert Welch, Inc.,* 680 F.2d 527, 532 (7th Cir.1982), *cert. denied,* 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983); 18 *Wright & Miller* § 4478, at 792–93. This second prong—known as the mandate rule—requires the trial court, following remand, to proceed in accordance with the appellate court's decision and mandate, *Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 79 (2d Cir.1997); *United States v. Sanchez,* 35 F.3d 673, 677 (2d Cir.1994), *cert. denied,* 514 U.S. 1038, 115 S.Ct. 1404, 131 L.Ed.2d 291 (1995); *Day v. Moscow,* 955 F.2d 807, 812 (2d Cir.), *cert. denied,* 506 U.S. 821, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992), and not consider questions which the mandate has laid to rest. *United States v. Bell,* 5 F.3d 64, 66 (4th Cir.1993); *accord Shakespeare Co. v. Silstar Corp. of Am., Inc.,* 906 F.Supp. 997, 1002 (D.S.C. 1995), *aff'd,* 110 F.3d 234 (4th Cir.1997). Consequently, a lower court has no discretion to deviate· from the mandate of a superior court.[3]

---

**3.** A transferee court must apply traditional principles of law of the case to the rulings of a

transferor court. *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir.

The mandate rule does not prevent the trial court from considering issues not expressly or impliedly decided by the appellate court. *Kavorkian v. CSX Transp., Inc.*, 117 F.3d 953, 958 (6th Cir.1997); *Habecker v. Clark Equip. Co.*, 942 F.2d 210, 217–18 (3d Cir.1991); *Barrett v. Thomas*, 809 F.2d 1151, 1154 (5th Cir.1987). In addition, three generally recognized exceptions limit the scope of the mandate rule: (1) an intervening change in the controlling law, (2) the need to correct a clear error of law or to prevent manifest injustice, or, of particular relevance here, (3) the availability of substantially different evidence at the trial on remand. *See, e.g., United States v. Sanchez*, 35 F.3d at 677; *Gates v. Shell Offshore, Inc.*, 881 F.2d 215, 217 (5th Cir.1989), *cert. denied*, 494 U.S. 1017, 110 S.Ct. 1320, 108 L.Ed.2d 495 (1990); *White v. Murtha*, 377 F.2d 428, 432 (5th Cir.1967). The latter exception "interlocks" with the principle, under Fed.R.Civ.P. 60(b)(2) [4], that a district court may grant relief from a judgment, even after it has been affirmed, based upon newly discovered evidence. *Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 836 F.Supp. 112, 116 (E.D.N.Y.1993); *see Standard Oil Co. v. United States*, 429 U.S. 17, 18–19, 97 S.Ct. 31, 31–32, 50 L.Ed.2d 21 (1976); *DeWeerth v. Baldinger*, 38 F.3d 1266, 1270 (2d Cir.), *cert. denied*, 513 U.S. 1001, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994). I do not decide at this point, however, the level of newness, discoverability or difference that this evidence must meet.

### B. The Evidence at the New Trial

Here, the Fifth Circuit ruled that the Claimants' proved their damages, *i.e.*, that the proof of damages was legally sufficient and not against the weight of the evidence. Law of the case applies to this issue, subject

to the exceptions already noted. Thus, "law of the case principles have been applied to give binding effect to decisions regarding the weight and sufficiency of the evidence at a former trial only where the evidence at the later trial is substantially the same as that at the earlier one." *United States v. Belculfine*, 527 F.2d 941, 943 (1st Cir.1975); *accord Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 788 (2d Cir.) (following appellate determination that evidence at first trial was sufficient to go to the jury, district court could not grant directed verdict or judgment n.o.v. at second trial because substantially different evidence was not presented), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *see Gates v. Shell Offshore, Inc.*, 881 F.2d at 217 (same); *cf. Kavorkian v. CSX Transp., Inc.*, 117 F.3d at 958–59 (where court reverses on liability issue and remands for new trial without addressing cross-appeal that damages were inadequate, the trial court was free to retry damages).

Consequently, either party may relitigate the prior damage award through the introduction of new and different evidence. Conceivably, the trial court could prehear the new evidence to decide if it fits within the exception. This approach would, however, lead to unnecessary delay, and embroil the court in preliminary disputes regarding whether the evidence is new, and if not, whether it should come in to prove some other issue. Instead, the court should make this determination after the second trial, *Pincus v. Pabst Brewing Co.*, 752 F.Supp. 871, 877 (E.D.Wis.1990), when it can compare the records of the two trials and ascertain if the evidence at the second trial is substantially different. *See, e.g., Doe v. New York City Dep't of Social Servs.*, 709 F.2d at 789. Suffice it to say, the potential for applying

1991); *see Yun v. Korean Air Lines (In re Korean Air Lines Disaster of Sept. 1, 1983)*, 798 F.Supp. 755, 759 (E.D.N.Y.1992). The parties agree that the Fifth Circuit's mandate applies to these proceedings to the same extent it would govern the district court retrial following remand. After transfer, however, the transferee court must apply the law of its own circuit to the subsequent proceedings. *See Moore v. Valder*, 65 F.3d 189, 195 n. 9 (D.C.Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 75, 136 L.Ed.2d 35 (1996).

4. Rule 60(b)(2) provides as follows:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).

law of the case following the conclusion of the second trial should not limit the proof before it even begins.

This conclusion necessarily rejects the debtors' argument that damages must be retried *de novo* because they are inextricably linked with the issues of liability and the affirmative defenses of contributory negligence and waiver. An appellate court cannot grant a partial new trial unless it clearly appears that the matter involved is entirely distinct and separable from the other matters, and will not work a possible injustice on either party. *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931); *Norfolk Southern R.R. Co. v. Ferebee*, 238 U.S. 269, 274, 35 S.Ct. 781, 782–83, 59 L.Ed. 1303 (1915); *Bohack Corp. v. Iowa Beef Processors, Inc.*, 715 F.2d 703, 709 (2d Cir.1983). For example, a court will generally not order a new trial on contributory negligence without also retrying damages. *Akermanis v. Sea–Land Serv., Inc.*, 688 F.2d 898, 906 (2d Cir.1982), *cert. denied*, 461 U.S. 927, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983). The concern is that the verdict represents a compromise, and hence, the tainted claim affected the final outcome. *See Rivera v. Farrell Lines, Inc.*, 474 F.2d 255, 259 (2d Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (1973); *cf. Norfolk So. R.R. Co. v. Ferebee*, 238 U.S. at 273, 35 S.Ct. at 782 ("Damages and contributory negligence are so blended and interwoven ... that the instances would be rare in which it would be proper to submit to a jury the question of damages without also permitting them to consider the conduct of the plaintiff at the time of the injury.")

A partial new trial is appropriate, however, if the issues are sufficiently independent. *See, e.g., Pressey v. Patterson*, 898 F.2d at 1024 (ordering new trial on liability only). The danger of taint is minimized where the court employs special interrogatories. The reviewing court can then satisfy itself that the jury reached an erroneous verdict independent of another verdict, justifying a partial retrial. *See, e.g., La Plante v. American Honda Motor Co.*, 27 F.3d 731, 738 (1st Cir.1994); *Brooks v. Great Lakes Dredge–Dock Co.*, 754 F.2d at 541; *Akermanis v. Sea–Land Serv., Inc.*, 688 F.2d at 906. Here, the jury answered special interrogatories, and made specific findings regarding the amount of damages that the defendants suffered under the remaining theories in the case.[5] Moreover, since the jury never considered the affirmative defenses, they did not taint its award. Although the retrial of the liability and defense issues may affect the amount of the damages that the Claimants can recover, the issue of damages is still independent. Nevertheless, the trial of the defenses may raise a practical problem that is discussed below.

## C. The Other Issues

Beyond what has already been said, the Fifth Circuit's decision leaves other issues open which may undermine the preclusive effect of its damage determination. The debtors raised two issues on appeal that the Court of Appeals refused to hear. First, they argued that the district court improperly lumped the debtors, treating them as one entity in its jury instructions. Second, the district court erred in permitting the jury to make separate awards for lost profits and damage to reputation or good will. The debtors maintained that future profits and reputation are elements of goodwill, and the instruction gave the Claimants double or triple recovery. *See Levitt Corp. v. Levitt*, 593 F.2d 463, 468 (2d Cir.1979) (goodwill is derived from a business's reputation, and the dilution of goodwill results in lost sales). The Fifth Circuit ruled that the debtors had waived these issues because they had failed to preserve them in the lower court. *Falconwood*, 100 F.3d at 433.

---

**5.** I disagree with the debtors that the jury's answer to Question No. 3 creates an ambiguity in the negligence award which precludes application of law of the case. The debtors argued before the Court of Appeals, as they do here, that it is not clear whether the damage award is based upon the dismissed Texas Act claim or the remanded negligence claim. The Court of Appeals implicitly rejected this argument by concluding that proof of damages with respect to the negligence claim was sufficient.

On remand, the debtors may be able to renew these arguments although I do not decide this issue today. Law of the case does not usually apply where, because of a procedural deficiency, the appellate court does not decide an issue on the merits. *See, e.g., Wilmer v. Board of County Comm'rs,* 69 F.3d 406, 409 (10th Cir.1995) (appellate court's refusal to consider belatedly raised jurisdictional objection did not prevent district court from considering issue on remand); *United States v. Caterino,* 29 F.3d 1390, 1395–96 (9th Cir.1994) (appellate court's refusal to consider challenge to sentence based upon waiver in district court did not prevent defendant from raising objections at resentencing hearing following remand); *Borger v. Yamaha Int'l Corp.,* 625 F.2d 390, 395 (2d Cir.1980) (appellate court's refusal to consider defendant's claim that it was entitled to judgment as a matter of law, based upon the defendant's failure to move for a judgment n.o.v. following trial, did not preclude the defendant from seeking review of the plaintiff's evidence presented at the retrial); *but see United States v. Bell,* 988 F.2d 247, 250 (1st Cir.1993) (a legal decision made at one stage of the case which is not challenged on appeal becomes the law of the case, and the aggrieved party cannot challenge that decision at subsequent date).

The lumping together of the debtors into a single entity and the separate awards for lost profits and goodwill affected the amount of the Claimants' recovery. As to the former, neither the district court nor the Fifth Circuit ruled that the debtors were alter egos or should be treated as one entity. The Claimants bear the burden of proof on this question, and absent such a showing or an alternative basis to impose joint and several liability for all injuries, the Claimants must prove how and to what extent each debtor caused each Claimant damages. As to the latter, the debtors' challenge could result in a substantially reduced damage award on any negligence claim. Stated differently, had the Court of Appeals considered the debtors' arguments and agreed that the jury instructions were erroneous, it could not have sustained the damage award.

Similarly, although independent of the issue of damages, the debtors affirmative defenses may make it difficult if not impossible to apply law of the case to the Fifth Circuit's damage determination. The affirmative defenses—contributory negligence and waiver—go, to varying extents, to the Claimants' knowledge or awareness.[6] What the Claimants knew or how they should have acted in 1990 may differ from what they knew or how they should have acted in 1992. If the Claimants prove their claims with respect to some of these transactions but not others, they may not be able to unscramble the damage determination to show how it applies to the proven claims.

Finally, the parties have glossed over the fact that Messrs. Nichols and Dawkins were apparently excluded from the jury charge and hence, did not receive any award. Yet both have filed claims against the debtors in this Court, and the debtors' are seeking affirmative relief against Mr. Nichols. The parties may be able to clarify this seeming omission, but in the absence of some clarification, the omission presents separate issues relating to law of the case which must await another day.

## CONCLUSION

For the foregoing reasons, the Claimants' motion *in limine* is denied. Assuming their law of the case argument is not foreclosed by an adverse determination on the liability issues, the parties may raise the applicability and scope of law of the case at the conclusion of the new trial.

Settle order on notice.

---

**6.** A "[w]aiver is an intentional relinquishment of a known right." *Gilbert Frank Corp. v. Federal Ins. Co.,* 70 N.Y.2d 966, 525 N.Y.S.2d 793, 795, 520 N.E.2d 512, 514 (1988); *accord International School Servs., Inc. v. Northwestern Nat'l Ins. Co.,* 710 F.Supp. 86, 89 (S.D.N.Y.1989); *Northport Marina Assocs. v. J.M. Cashman, Inc. (In re Northport Marina Assocs.),* 146 B.R. 60, 63 (Bankr.E.D.N.Y.1992). While negligence involves conduct rather than a state of mind, William L. Prosser, *The Law of Torts* § 31, at 145 (4th ed.1971), the idea of risk which is inherent in the concept of negligence "necessarily involves a recognizable danger, based upon some knowledge of the existing facts, and some reasonable belief that harm may follow." *Id.* at 146.